UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| MAURICE WILLIAMS, # 612039, ) | |
| ) | |
| Petitioner, ) | Case No. 1:15-cv-961 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| S. L. BURT, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**REPORT AND RECOMMENDATION**

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner's convictions arise out of an incident during which petitioner, Timothy Sanders, and Fitzpatrick Blakely beat and robbed the victim, Anthony "Tony" Givans. Witness testimony and DNA evidence showed that petitioner hit Tony Givans in the head four times with a baseball bat. On June 28, 2006, a Van Buren County Circuit Court jury found petitioner guilty of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and armed robbery, MICH. COMP. LAWS § 750.529. The trial court judge sentenced petitioner to concurrent terms of 225 months to fifty years' imprisonment.

On September 25, 2015, petitioner filed his habeas corpus petition. Petitioner seeks federal habeas corpus relief on the following ground:

> The trial court abused its discretion in denying the motion for a new trial when the evidence clearly showed that the suppressed evidence was material and would likely have resulted in a different outcome.

(ECF No. 1, PageID.6; ECF No. 1-1, PageID.28; ECF No. 6-10, PageID.718, 736).

Respondent argues that the petition should be denied for lack of merit. (ECF No. 5).

Judge Maloney has referred the matter to me for all purposes, including the issuance of a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. After review of the state-court record, I conclude petitioner has not established grounds for federal habeas corpus relief. Petitioner has not shown that the state court decision rejecting the ground raised in the petition was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). I recommend that the petition be denied on the merits.

## **Standard of Review**

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).

"State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings – not dicta – of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court.). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be " 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal

law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## Proposed Findings of Fact

A.  Circuit Court Proceedings

Petitioner's trial began on June 27, 2006, and it ended the next day with the jury's verdict convicting him of the offenses described above. (Trial Transcripts TTI -TTII, ECF No. 6-3, 6-4).

On February 20, 2006, Anthony "Tony" Givens had spent the day working at Harding's Market in Bangor, Michigan. He punched out at 10:23 p.m. and began the long walk home along County Road 681. (TTI, 89-95, PageID.194-200). On that night, petitioner and Fitzpatrick Blakely were passengers in a car being driven by

Timothy Sanders. Mr. Blakely was on the passenger side in front and petitioner was in the back seat. (TT II, 43-44, PageID.357-58).

Petitioner, Blakely, and Sanders saw Tony Givens walking alone and they formulated a plan to rob him. They went to petitioner's house where petitioner retrieved a baseball bat. Timothy Sanders drove the car to a dark area along the county road and parked. Petitioner and the others got out of the car and waited for Tony Givans to walk into the ambush. Petitioner had the baseball bat. Fitzpatrick Blakely told petitioner to "handle it." Petitioner hit Tony Givens in the head and knocked him to the ground. Blakely testified that he saw petitioner hit the victim in the head with the baseball bat "[a]bout four times." Fitzpatrick Blakely punched the victim twice and kicked him. Timothy Sanders kicked the victim and took his wallet. (TTII, 40-51, PageID.354-65).

Petitioner, Blakely, and Sanders got back in the car and drove away. They ended up at petitioner's house. Petitioner threw the bat by a shed in his yard. He hid the stolen wallet inside a wall. (TTII, 51-52, PageID.365-66).

Rhonda Wilkinson was watching television at home on the night of February 20, 2006. She heard a faint knock on her door. She woke up her boyfriend, David Barker, and both went to investigate. They found Tony Givans at the doorstep with blood on his hands and face and pleading for help. They brought him inside. He explained that he had been walking along County Road 681 when he was attacked, kicked and beaten by three or four men. Ms. Wilkinson testified that when Tony Givans took off his hat she could see that he had "[s]everal holes in his head" and was

bleeding profusely. Ms. Wilkinson and Mr. Barker used a kitchen towel in an attempt to slow the bleeding. Ms. Wilkinson called 911. (TTI, 115-22, PageID.220-27). Dispatch records show that her call was received at 10:47 p.m. (TTI, 110-15, PageID.215-20).

Michigan State Police Trooper Andrew Jeffrey was at the South Haven Emergency room on another matter when he saw Tony Givans being wheeled into the emergency room on a gurney. Despite his serious head wounds, Tony Givans was able to relate how he had been walking home along County Road 681 after work when he was attacked. He was hit from behind and knocked to the ground and remembered being kicked on and about his head. Tony Givans could not identify his attackers. (TTI, 122-35, PageID.227-40).

Tony Givans underwent a craniotomy for evacuation of a blood clot and debridement and removal of devitalized tissue, including removal of a portion of his temporal lobe as surgeons attempted to stop the bleeding that was going on inside his brain. He had significant and extensive skull fractures of the right temporal and parietal bone with fragments of bone imbedded in the brain. There was extensive disruption of the brain tissue and a shift of brain tissue from the right side to the left side of his skull. His injuries had been caused by a blunt force instrument wielded with significant force, hitting the right side of his head above the ear and another blow to the top of his head. The damage was consistent with two or three blows to the head. (TTI, 168-89, Page ID.273-94). Tony Givans was in a nursing home at the time of petitioner's trial. (TTII, 127, PageID.441).

Detective Sergeant Diane Oppenheim of the Michigan State Police testified regarding the course of the investigation and the evidence that led them to petitioner, Fitzpatrick Blakely, and Timothy Sanders. (TTII, 107-26, PageID.421-40). Police obtained a search warrant for petitioner's property and found a bloody bat behind a small barn. Tony Givans's blood and DNA were found on the fat end of the baseball bat. Police seized a pair of blue jeans and a gray jacket that they found in an upstairs bedroom of petitioner's residence. There was a mixture of DNA on the gray jacket. The DNA profiles matched petitioner and Tony Givans. DNA on the jeans matched Fitzpatrick Blakely.

Fitzpatrick Blakely testified that petitioner had been wearing the gray jacket on the night that they attacked Tony Givens. He identified the bat the police recovered as the one petitioner used against the victim. (TTI, 131-33, 145-52, 190-201, PageID.236-38, 250-57, 295-306; TTII, 2-39, 56-57 PageID.315-53, 370-71).

Petitioner's attorney cross-examined Fitzpatrick Blakely at length. (TTII, 57-105, PageID.371-419). Pursuant to a stipulation by the parties, the jury was advised of the impact Mr. Blakeley's plea agreement would have on his sentence. (TTII, 131-32, PageID.445-46).

On June 28, 2006, the jury returned its verdict finding petitioner guilty of assault with intent to commit murder and armed robbery. (TTII, 174-76, Page ID.488-90). Petitioner was sentenced on July 28, 2006. (ECF No. 6-5, PageID.500).

B.  Subsequent Proceedings

Petitioner's appellate counsel raised a number of issues on direct appeal. (ECF No. 6-9, PageID.620). On March 22, 2013, the Michigan Court of Appeals granted

petitioner's attorney's motion for remand to the Van Buren County Circuit Court to permit petitioner to move for a new trial and for the trial court to conduct an evidentiary hearing to determine whether the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose polygraph results for Fitzpatrick Blakely and Timothy Sanders. The Court of Appeals retained jurisdiction. (*Id.* at PageID.670).

On May 3, 2013, Judge Kathleen Brickley of the Van Buren County Circuit Court conducted an evidentiary hearing on petitioner's motion for a new trial. (ECF No. 6-8). She heard testimony from petitioner's trial counsel (*Id.* at PageID.537-83) and an attorney who had represented petitioner during his 2008 murder trial (*Id.* at PageID.584-95). She also considered the arguments for and against petitioner's motion. (*Id.* at PageID.595-602). At the conclusion of the hearing, Judge Brickley entered an oral opinion explaining why she was denying petitioner's motion for a new trial. (*Id.* at PageID.602-07).

The judge found that, although it appeared the actual body of the report had not been provided, a May 4, 2006, supplement contained everything of substance in the polygraph report and it had been provided to defense counsel. (*Id.* at PageID.603). She found that the evidence was favorable to petitioner, but petitioner had possessed the evidence. (*Id.* at PageID.604-05). Judge Brickley found that the evidence could have been obtained through the exercise of reasonable diligence and that the State did not suppress the evidence. (*Id.* at PageID.605). She found that there was no reasonable probability that, if the evidence had been disclosed, the result would have been different. (*Id.* at PageID.605-07). On May 7, 2013, Judge Brickley entered her

order denying petitioner's motion for a new trial. (ECF No. 6-9, PageID.685).

Petitioner's appellate counsel filed a supplemental brief raising the issue that petitioner is raising in his habeas corpus petition. (ECF No. 6-9. PageID.688). On January 28, 2014, the Michigan Court of appeals entered its decision rejecting all the issues raised by petitioner for lack of merit and affirming his convictions. (Op., ECF No. 6-9, PageID.610-12).

Petitioner sought leave to appeal to Michigan's highest court. (ECF No. 6-10, PageID.717-21). On September 29, 2014, the Michigan Supreme Court denied petitioner's application for leave to appeal. (*Id.* at PageID.715).

On September 25, 2015, petitioner filed his habeas corpus petition.

## Discussion

Petitioner seeks federal habeas corpus relief based on an argument that the trial court abused its discretion in denying his motion for a new trial based on an alleged *Brady* violation. (ECF No. 1, PageID.6; ECF No. 1-1, PageID.28; ECF No. 6-10, PageID.718, 736; *see also* Petitioner's Brief, ECF No. 1-1, PageID.28-32).

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and

prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice and materiality are established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 281 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Bagley*, 473 U.S. at 682.

Because the Michigan Court of Appeals rejected petitioner's claim for lack of merit, petitioner faces a significant additional hurdle. He must demonstrate either that the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Petitioner has not addressed, much less carried his burden.

The Michigan Court of Appeals found no *Brady* violation. Petitioner had only shown that the state possessed evidence favorable to petitioner. (Op. at 3, ECF No. 6-9, PageID.612). There was no *Brady* violation because petitioner's attorney "actually possessed the [polygraph] results" and "he made extensive use of the information contained in the report in cross-examination of Blakely[.]" (Op. at 3, PageID.612). Further, the prosecution presented "overwhelming evidence" of petitioner's guilt (*Id.* at 2, PageID.611), and "there was no reasonable probability that the outcome of the proceedings would have been different." (*Id.* at 3, PageID.612).

Petitioner has not shown that the decision of the Michigan Court of Appeals

was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; nor has he shown that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### Certificate of Appealability

Even though I have concluded that petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined petitioner's claim under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claim. *Id.*

-12-

I find that reasonable jurists could not conclude that this Court's denial of petitioner's claim would be debatable or wrong. Accordingly, I recommend that a certificate of appealability be denied.

### **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits. I further recommend that a certificate of appealability be denied.

Dated: March 8, 2018         /s/ Phillip J. Green
                             PHILLIP J. GREEN
                             United States Magistrate Judge

### **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).